IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08cr166-1 |
| | ) | |
| IRVIN JAMAR FERGUSON, | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

Before the court is the Petition for Writ of Error *Coram Nobis* of Defendant/Petitioner Irvin Jamar Ferguson ("Ferguson") (Doc. 28), seeking to vacate his conviction for possession of a firearm and ammunition by a felon under 18 U.S.C. § 922(g) based on the jury's guilty verdict entered September 25, 2008. Ferguson is awaiting sentencing and argues that the recent holding in Arizona v. Gant, 129 S. Ct. 1710, 173 L.Ed.2d 485 (2009), issued subsequent to his conviction, renders the search of the vehicle in which he was riding as a passenger illegal and requires that the firearm and rounds of ammunition seized from the rear floorboard as a result be suppressed. The Government opposes the petition on multiple grounds, including arguments that such a writ would be premature, Ferguson lacks standing, and Gant does not apply to this case. (Doc. 29 at 4.) Ferguson has filed a reply. (Doc. 30.) An evidentiary hearing was held

on August 27, 2009. For the reasons set forth herein, the petition is denied.

**I. Background**

Ferguson was indicted on March 27, 2008, for possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g) and 924(e). (Doc. 1.) This case was tried to a jury September 22-25, 2008. The evidence demonstrated the following:

On January 30, 2008, Officer M.C. Knight of the Winston-Salem Police Department ("WSPD") stopped a Ford Explorer sport utility vehicle ("SUV") he observed travel at a high rate of speed and subsequently run a stop sign. A female, Jaime Evans, was driving, and Ferguson was a passenger in the front seat. Officer Knight determined that Evans' driver's license had been revoked and cited her for driving with a revoked license and for running a stop sign.

Neither Evans nor Ferguson owned the vehicle; however, Evans had the permission of the owner, Candice Reeves, who was "a friend," to use it that evening.[1] After determining that Ferguson also lacked a valid driver's license, Officer Knight advised both Evans and Ferguson that neither could drive the vehicle from the scene. As Ferguson stepped out of the vehicle, another officer who had arrived, Officer Hege, observed a bullet

---

[1] Evans told different versions of the events of that evening. At trial she testified that she had picked up Ferguson (who earlier had been at Reeves' house) at his sister's house after Evans dropped Reeves off at work.

in plain view on the passenger seat where Ferguson had just been sitting. Officer Hege placed Ferguson in handcuffs but told him he was not under arrest. Officer Hege conducted a protective frisk of Ferguson but did not locate any weapons. Ferguson was directed to sit on a wall nearby while Officer Hege "frisked" the vehicle passenger area. The officer located a Bryco Arms .38 caliber semiautomatic pistol in the glove box and more rounds of ammunition in the back passenger area. Ferguson initially gave a false name but, after the WSPD determined his identity, was arrested on an unrelated outstanding warrant.

Ferguson never moved to suppress the firearm or ammunition.

**II. Analysis**

    *A.   Coram Nobis*

Ferguson argues that no federal statute or Federal Rule of Criminal Procedure provides an adequate method to challenge a constitutional violation prior to the imposition of a sentence, thereby making a writ of *coram nobis* appropriate in light of the Supreme Court's decision in Arizona v. Gant. (Doc. 28 at 8-9.) The Government contends that (1) Ferguson waived his right to contest the search by failing to move to suppress the evidence as required by Federal Rule of Criminal Procedure 12(b)(3)(c), and (2) the petition is premature because a remedy exists pursuant to 28 U.S.C. § 2255 once the court sentences Ferguson. (Doc. 29 at 1.) Ferguson responds that he could not have moved

3

to suppress under law applicable at the time of trial[2] and that requiring him to await relief through 28 U.S.C. § 2255 would involve unnecessary delay.

The U.S. Supreme Court has "limit[ed] the availability of the writ [of *coram nobis*] to 'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" United States v. Denedo, 129 S. Ct. 2213, 2220 (2009) (citing United States v. Morgan, 346 U.S. 502, 511 (1954)). The Court has observed that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (brackets in original) (citing United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

The court's authority to vacate a conviction through a writ of *coram nobis* derives from the All Writs Act, 28 U.S.C. § 1651. "[T]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." Carlisle, 517 U.S. at 429. Ultimately, issuance of a writ of *coram nobis* lies within the discretion of the court. See Santos-Sanchez v. United States, 548 F.3d 327, 330

---

[2] Ferguson noted that at the time of trial, before Gant, searches of automobiles were more broadly permitted incident to arrest under New York v. Belton, 453 U.S. 454 (1981).

4

(5th Cir. 2008); Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000); United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000).

Courts have found the writ inappropriate when relief through habeas corpus may be sought. E.g., Denedo, 129 S. Ct at 2221 ("Another limit . . . is that an extraordinary remedy may not issue when alternative remedies, such as habeas corpus, are available."); United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001) (noting *coram nobis* is only available when a section 2255 motion is unavailable, "generally, when the petitioner has served his sentence completely and thus is no longer 'in custody' as required for § 2255 relief"); United States v. Brown, 117 F.3d 471, 475 (11th Cir. 1997) ("If [the defendant] was 'in custody' within the meaning of § 2255 when he filed his appeal, then the statutory remedies of that provision were available to him, and coram nobis relief was unavailable as a matter of law."); see also United States v. Barrett, 178 F.3d 34, 54-55 (1st Cir. 1999) (finding *coram nobis* inappropriate because section 2255 was applicable, even though it barred second petition); United States v. Bush, 888 F.2d 1145, 1147 (7th Cir. 1989) ("Contemporary *coram nobis* matters only after

5

custody expires . . . ."); Madigan v. Wells, 224 F.2d 577, 578 n.2 (9th Cir. 1955) (same).[3]

A federal remedy under 28 U.S.C. § 2255 is available to contest a conviction once a prisoner is in custody "under sentence of a [federal] court." 28 U.S.C. § 2255(a). Ferguson's petition was filed a little over two weeks before his sentencing and was heard on the day he was scheduled to be sentenced. Thus, Ferguson was on the cusp of being eligible to file his appeal and a section 2255 motion.

These facts distinguish this case from the vast majority of *coram nobis* cases. Neither party has cited any authority granting or denying a writ of *coram nobis* for a defendant in custody between conviction and sentencing. Nor has the court

---

[3] Some dated cases have indicated that a writ of *coram nobis* may lie when a petitioner "has not begun serving the federal sentence under attack." United States v. Little, 608 F.2d 296, 299 n.5 (8th Cir. 1979); accord Thomas v. United States, 271 F.2d 500, 503 (D.C. Cir. 1959). However, in both Little and Thomas, the courts followed the view that *coram nobis* cannot lie where post-conviction relief is available under 28 U.S.C. § 2255. See Little, 608 F.2d at 299; Thomas, 271 F.2d at 504. In United States v. Mathis, 369 F.2d 43, 48-49 (4th Cir. 1966), the defendant, who had been given a one-year and a day federal suspended sentence, was in state custody pending a federal hearing on a parole violation. He sought *coram nobis* relief because his state violation would trigger the activation of his federal sentence, which he argued was illegal. The court stated that the "in custody" requirement has been "consciously relaxed" in section 2255 cases and entertained the *coram nobis* petition because the government conceded the illegality of the defendant's sentence, which the defendant would effectively serve should he be forced to await the delay attendant to pursuing a section 2255 motion. Even there, however, Mathis had already been sentenced.

6

located any Supreme Court or reported Fourth Circuit precedent directly on point.[4]

Here, Ferguson is in federal custody pending his imminent sentencing and is not without a remedy, as he has the ability to file a direct appeal and seek relief under section 2255, once sentenced. He argues strongly that the delay in pursuing these remedies is unwarranted given the strength of the alleged error. In addressing the merits of his claim, however, it is apparent that Ferguson fails to make a compelling case for relief under *coram nobis* because he has not demonstrated that he is entitled to relief under Arizona v. Gant, as noted below.

### B. Defendant's Expectation of Privacy

The Government argues that Ferguson lacks standing to contest the vehicle search because, as a passenger, he did not have a reasonable expectation of privacy in the area searched.[5] (Doc. 29 at 3.) Based on Ferguson's request and as a matter of

---

[4] *Coram nobis* has been recognized as appropriate based on a subsequent change in the law, but only where the defendant had completed his sentence. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir. 1988). The only Fourth Circuit opinion addressing the requirement that a defendant not be in custody, In re Daniels, 203 F. App'x 442, 443 (4th Cir. 2006), is unpublished.

[5] The Supreme Court has rejected the "standing" doctrine in the search and seizure context, ruling that "definition of . . . [a defendant's rights] is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." Rakas, 439 U.S. at 140. The court, therefore, will discuss Ferguson's ability to challenge the search and seizure of the firearm and ammunition in terms of whether his Fourth Amendment rights were implicated rather than in terms of "standing."

7

judicial efficiency, the court gave Ferguson an opportunity to establish an expectation of privacy in the vehicle to entitle him to challenge the constitutionality of the search and seizure.

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) (internal quotation marks and citation omitted); United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007). To challenge a search under the Fourth Amendment, the defendant must have a "legitimate expectation of privacy" in the area searched. Rakas, 439 U.S. at 143. A "legitimate" expectation of privacy requires not only a subjective expectation of privacy in the searched premises, but also an objective expectation "that society is prepared to recognize as reasonable." Bond v. United States, 529 U.S. 334, 338 (2000) (internal quotation marks and citation omitted). The burden of proof rests with the defendant. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Gray, 491 F.3d at 144; cf. United States v. Vega, 221 F.3d 789, 795 (5th Cir. 2000) (defendant must prove by a preponderance of the evidence); United States v. Cantley, 130 F.3d 1371 (10th Cir. 1997) (same).

"[D]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." United States v.

8

Salvucci, 448 U.S. 83, 85 (1980).  "Legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest," but such possession may be a factor in assessing a Fourth Amendment violation.  Id. at 91.  Even assuming Ferguson's testimony as to ownership is credible, therefore, mere ownership of the gun and ammunition is not sufficient to establish a Fourth Amendment violation.  Rather, "[t]he privacy interest that must be established to support standing is an interest in the area searched, not an interest in the items found." Manbeck, 744 F.2d at 374.  Thus, the issue is whether Ferguson had an expectation of privacy as a passenger in the automobile searched.  For purposes of this analysis, the court assumes that Ferguson had a subjective expectation of privacy in the vehicle and focuses upon the objective expectation.

It is widely accepted that persons enjoy a lower expectation of privacy in an automobile. California v. Carney, 471 U.S. 386, 392 (1985); United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992).  "A passenger in a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object." United States v. Carter, 300 F.3d 415 (4th Cir. 2002).

The court finds the following facts from the trial record and Ferguson's testimony at the hearing on August 27, 2009: Ferguson did not own the vehicle. Though the owner had authorized Ferguson to drive the vehicle in the past, more than twenty times according to Ferguson's testimony, he was not the authorized driver when the WSPD stopped the vehicle on January 30, 2008. Additionally, as Ferguson acknowledged, the owner granted other individuals use of and access to the vehicle. Ferguson left items, such as clothes, electronics, and money, in the back area of the SUV, which was open but separate from the passenger compartment, for periods ranging from hours to days. There was no evidence that the vehicle was locked to protect any of these items, or that Ferguson expected it to be. Ferguson did claim ownership and possession of the firearm and all the ammunition seized. Finally, Ferguson concedes he did not have a valid driver's license at the time of the search.

Finding that Ferguson did not have ownership interest in the vehicle, the court turns to whether he had an objectively reasonable possessory interest. The court finds that Ferguson's claims he held such a possessory interest are unpersuasive. Importantly, he could not have lawfully possessed the vehicle on this date because his license was revoked and he could not legally operate it. Cf. United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (unauthorized driver of a rental car had no

10

expectation of privacy in the car).  Ferguson had no ability to control or exclude others from the vehicle, either, as he was not the driver but rather just a passenger.  Cf. United States v. Sanchez, 943 F.2d 110 (1st Cir. 1991) (suggesting that a pattern of permission coupled with sole control of a vehicle may rise to the level of sufficient possessory interest for purposes of a driver).  Nor did he have the keys to the vehicle on this occasion.  That Ferguson may have had permission to drive the vehicle in the past, on this record, does not rise to the level of demonstrating a sufficient, reasonable expectation of privacy.

The court also finds that any subjective expectation of privacy Ferguson claims because of items he left in the vehicle from time to time was not objectively reasonable.  The evidence indicated that he left valuables in the vehicle in the past without regard to the vehicle being locked or secured in any reasonable fashion.  On the contrary, they were simply left in the open area of the vehicle behind the passenger seats.  See United States v. Stanfield, 109 F.3d 976 (4th Cir. 1997) (expressing doubt that a defendant would have a reasonable expectation of privacy in portions of an interior passenger compartment that may be viewed from the outside by "inquisitive

passersby or diligent police officers") (citing Texas v. Brown, 460 U.S. 730 (1983)).[6]

In the end, Ferguson's argument rests on his claim to ownership in the items seized – the firearm and all the ammunition. In the absence of any credible evidence of ownership or possession of the vehicle searched, however, the court finds this assertion insufficient to establish a reasonable expectation of privacy in the vehicle.

The court finds, therefore, that Ferguson has not established by a preponderance of the evidence that he had an objective expectation of privacy in the vehicle searched. His Fourth Amendment rights were not implicated in this search, and he cannot challenge the validity of the search and seizure.[7] Thus, the basis he now alleges in his request for relief under *coram nobis* – a violation of Arizona v. Gant – is unavailable to him.

---

[6] Even if Ferguson could demonstrate a reasonable expectation of privacy as to the compartments of the vehicle, moreover, he fails to show how he held an objectively reasonable expectation of privacy as to the ammunition lying in his seat that was clearly viewable by the officers when Ferguson stepped out of the car. Inasmuch as Ferguson was convicted of possession of the ammunition in a separate interrogatory, such ammunition is sufficient to uphold the conviction.

[7] In light of the court's disposition of Ferguson's petition, it need not reach the issue of whether the conviction nevertheless stands on the ground that any of the ammunition found in Ferguson's car seat was in plain view. United States v. Jackson, 131 F.3d 1105, 1108-09 (4th Cir. 1997).

12

**III. Conclusion**

The court has considered all the arguments raised by the Petition for Writ of Error *Coram Nobis*. For the reasons set forth above,

IT IS THEREFORE ORDERED that the Defendant's Petition for Writ of Error *Coram Nobis* (Doc. 28) is DENIED.

/s/ Thomas D. Schroeder  
United States District Judge

October 15, 2009